**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 15-2197**

—————————

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

Plaintiff - Appellant,

v.

KEN STOLLE, Sheriff for Virginia Beach, Virginia sued in his official and individual capacity; G. HAVENS; V. OGDEN; A. TORNO; V. HARRIS; M. BRITTINGHAM; MATTHEW WILSON; E. RODRIGUEZ; DARLENE MOORE,

Defendants – Appellees,

and

JOHN DOES 1-10,

Defendant.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, District Judge. (2:13-cv-00424-MSD-TEM)

—————————

Argued: December 8, 2016                          Decided: March 6, 2017

—————————

Before TRAXLER, FLOYD, and THACKER, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

**ARGUED:** Jeffrey Edward Fogel, Charlottesville, Virginia, for Appellant. Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Steven D. Rosenfield, Charlottesville, Virginia, for Appellant. Lisa Ehrich, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Prison Legal News (PLN) filed suit against Sheriff Kenneth Stolle and several of his subordinates (collectively, the "Defendants") alleging that PLN's First and Fourteenth Amendment rights were violated by policies and practices that prohibited PLN's publication from entering the jail operated by Sheriff Stolle. PLN's suit was partially successful. At the conclusion of litigation, the district court awarded attorneys' fees to PLN, but reduced that fee award by 45% based on the limited nature of PLN's success. Finding no abuse of discretion in the court's award, we affirm.

I.

PLN is the publisher of a monthly magazine, *Prison Legal News: Dedicated to Protecting Human Rights* ("*Prison Legal News*"), which reports on criminal justice issues and is marketed primarily to inmates. Over the past several years, inmates at the Virginia Beach Correctional Center (VBCC)—operated by Sheriff Stolle and the Virginia Beach Sheriff's Office (VBSO)—have not been permitted to receive the monthly *Prison Legal News* magazine due to the magazine's alleged violation of the VBSO's "sexually explicit" materials and "ordering forms" policies.

PLN's suit challenged the Defendants' exclusion of its magazine from the VBCC. On December 8, 2014, the district court ruled in favor of the Defendants based on the VBSO "ordering forms" policy, but reserved judgment on the "sexually explicit" materials policy. The court also concluded that money damages were not available to

3

PLN as to the "sexually explicit" materials policy because the Defendants were shielded by qualified immunity, but that injunctive relief remained a viable option.

The district court entered an opinion and order on March 31, 2015, which found that the VBSO had previously maintained an unconstitutionally overbroad "sexually explicit" materials policy. *See Prison Legal News v. Stolle* (*Stolle I*), No. 2:13-cv-424, 2015 WL 1487190, at *10 (E.D. Va. Mar. 31, 2015). Although this policy had been amended during the course of the litigation, the court entered a permanent injunction precluding the VBSO from returning to its former policy. *Id.* Additionally, the court found that the Defendants had previously engaged in due process violations in their handling of magazine censorship decisions. *Id.* at *15. Again, although such procedures had been modified and corrected during the course of the litigation, the court entered a permanent injunction precluding the VBSO from returning to its prior practices. *Id.*

The opinion and order appealed here were entered on September 8, 2015, and granted attorney's fees to PLN. *Prison Legal News v. Stolle* (*Stolle II*), 129 F. Supp. 3d 390 (E.D. Va. 2015). The district court found that PLN qualified as a "prevailing party" in this case, and thus was entitled to at least a partial award of fees and litigation expenses. *Id.* at 395. The court then applied our three-step framework for calculating a reasonable attorney's fee award established in *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).

Applying the first two *McAfee* steps, the district court analyzed in detail the number of hours billed, the rates billed, and the type of work conducted, then reduced hours for duplicative work, and ultimately produced a lodestar summary graph that was

4

not disputed by the parties. *Stolle II*, 129 F. Supp. 3d at 397–405. The primary contention on appeal revolves around the third *McAfee* step, the court's adjustment for degree of success, which the court analyzed as follows.

The court found that both PLN and the Defendants succeeded in the litigation. *Id.* at 405–07. The Defendants demonstrated that they were qualifiedly immune from money damages resulting from long-term censorship of PLN's publications through maintenance and application of both the VBSO "ordering forms" policy and "sexually explicit" materials policy. *Id.* at 405. Moreover, the Defendants demonstrated that PLN did not suffer money damages based on the exclusion of its monthly magazine from VBCC, because the banned issues were constitutionally excluded pursuant to the VBSO's "ordering forms" policy. *Id.* The court noted that "prior to the entry of the consent decree, questions remained as to the amount of nominal damages on [PLN]'s due process claims and whether punitive damages were recoverable on such claims, [however,] these matters were resolved by consent decree in a manner that avoided any monetary award. *Id.* Accordingly, PLN failed to recover any of the nominal, compensatory, or punitive damages it sought in its amended complaint. The court noted that:

> Although [PLN] seeks to downplay its efforts to collect monetary damages, this Court is required to compare "what [the plaintiff] sought with what was awarded." *McAfee*, 738 F.3d at 93. Here, even as late as April 2015, [PLN] reiterated its desire to proceed to trial in an effort to recover both nominal and punitive damages. Accordingly, while a fair reading of the amended complaint does not suggest that money damages were the motivator behind this litigation, [PLN] pursued money damages at all stages of the case. *Cf. Mercer v. Duke Univ.*, 401 F.3d 199, 205–06 (4th Cir. 2005) (indicating that while a court must consider "the purpose of the lawsuit" in that it must examine whether the lawsuit seeks injunctive relief or monetary relief, "the subjective motives of the plaintiff" are not relevant

5

to "prevailing party" status nor relevant to determining "the extent of the relief obtained," noting that "[i]f the rule were otherwise, then every plaintiff recovering only nominal damages would claim that the only thing he was really ever interested in was a liability finding").

*Id.* at 405 n.6.

Additionally, the district court pointed to the Defendants' success in defending its "ordering forms" policy. *Id.* at 406. Based on the court's summary judgment ruling, "such policy provided a valid justification for Defendants' decision to exclude all monthly issues of PLN's magazine from the VBCC." *Id.*

The district court found that despite the Defendants' success, PLN was the prevailing party because it secured permanent injunctive relief for two VBSO policies and ultimately succeeded in ending future exclusion of its publication via consent decree. *Id.* at 406. The court made three observations regarding PLN's success: (1) PLN "succeeded in establishing that the VBSO maintained an unconstitutionally broad sexually explicit materials policy" applied against PLN's magazine; (2) PLN "succeeded on its due process claims associated with the VBSO's publication review policy," because required notices were not sent to publishers informing that their publications were refused; and (3) PLN "appeared entitled to nominal damages and had at least the potential to recover punitive damages," but leveraged that advantage into a consent decree whereby future issues of its magazine would be delivered to the VBSO. *Id.*

Finally, taking into account each party's success and failure, the district court concluded that a 45% reduction in attorney's fees was appropriate, and reduced the fee award from $154,889 to $85,189. *Id.* at 407. PLN timely appealed.

6

We review a district court's award of attorney's fees for an abuse of discretion. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). "Our review of the district court's award is sharply circumscribed" in light of the district court's "close and intimate knowledge of the efforts expended and the value of the services rendered." *Id.* (internal quotation marks omitted). Accordingly, "we will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law.'" *McAfee*, 738 F.3d at 88 (quoting *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

Although the district court has discretion in its award of attorney's fees, it remains important for the court to "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Moreover, "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

Calculating a reasonable attorney's fee award requires a three-step process. *McAfee*, 738 F.3d at 88. A court must (1) "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate;" (2) "subtract fees for hours spent on unsuccessful claims unrelated to successful ones;" and (3) "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks omitted).

In analyzing the third *McAfee* step, a court should reduce an award if the relief is limited in comparison to the scope of the litigation as a whole, with a court asking

whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434, 438–40; *McAfee*, 738 F.3d at 92. Accordingly, when a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole, times a reasonable hourly rate, may be an excessive amount "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. An attorney's fee award under § 1988 is therefore not driven by whether it was reasonable to file suit or whether plaintiff's counsel litigated the case with devotion and skill. Rather, "the extent of a plaintiff's success is 'the most critical factor.'" *McAfee*, 738 F.3d at 92 (quoting *Hensley*, 461 U.S. at 436).

## III.

PLN argues on appeal that the district court abused its discretion in reducing the fee award by 45%, noting that it "achieved excellent results in the litigation." Appellant's Br. at 6. PLN puts forward two arguments in support of its conclusion. First, PLN contends that it did not primarily seek money damages, and therefore the court unfairly accounted for its lack of damages in reducing the fee award. Second, PLN argues that the 45% reduction was arbitrary.

We disagree with PLN's arguments that the district court's calculation was unfair or arbitrary. As noted above, the court explained in detail the damages sought, the relief obtained in the case, and its reasoning for reducing the fee award. The court specifically—and correctly—pointed out that PLN unsuccessfully "pursued money

8

damages at all stages of the case." *Stolle II*, 129 F. Supp. 3d at 405 n.6. In its final analysis, the court clearly weighed "[PLN]'s tangible and substantial victories on some of its § 1983 claims, while also taking into account Defendants' success in avoiding any monetary damages as well as defending the constitutionality of their prior exclusion of all of [PLN]'s publications from the VBCC based on the lawful VBSO 'ordering forms' policy." *Id.* at 407. In other words, the court adequately "provide[d] a concise but clear explanation of its reasons," and "ma[de] clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

PLN fails to show—and nothing in the record indicates—that the 45% reduction was "clearly wrong" or that the district court has committed an "error of law." Nor does PLN meet the demanding burden of establishing an abuse of discretion on appeal. Given the civil rights issues involved in this case, another judge may have reasonably ordered a higher fee award. However, the reduction applied by the district court was not unreasonable and was well within the bounds of the court's broad discretion.

IV.

Accordingly, the district court's attorney's fee award is

AFFIRMED.