Filed:   January 23, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2481**
(3:11-cv-00646-REP-MHL)

EILEEN MCAFEE,

> Plaintiff – Appellee,

>> v.

CHRISTINE M. BOCZAR,

>> Defendant – Appellant,

>> and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

>> Defendants.

**No. 13-1088**
(3:11-cv-00646-REP-MHL)

EILEEN MCAFEE,

> Plaintiff – Appellee,

>> v.

CHRISTINE M. BOCZAR,

>> Defendant – Appellant,

>> and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

>> Defendants.

**No. 13-1356**
(3:11-cv-00646-REP-MHL)

EILEEN MCAFEE,

       Plaintiff – Appellee,

    v.

CHRISTINE M. BOCZAR,

       Defendant – Appellant,

    and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

       Defendants.

O R D E R

Upon consideration of the Motion to Amend or Correct Opinion filed by the Defendant – Appellant, Christine M. Boczar, and the Motion to Amend and Correct Opinion filed by the Plaintiff – Appellee, Eileen McAfee, the Court grants the motions, with modifications, and amends its opinion filed December 12, 2013, as follows:

On page 3, section I.A., first line of text, the date "December 26" is corrected to read "December 28."

On page 5, lines 8-10, the sentence, "Boczar then arrested McAfee on the warrant and transported her to the County

2

Sheriff's Office." is replaced with the sentence, "McAfee was arrested on the warrant and transported to the County Sheriff's office."

On page 7, line 10, the word "refuse[d]" is replaced with "refuses."

On page 7, lines 13-15, the text, "Boczar had explained that she could locate the dog, though she did not have the address where it lived" is replaced with "the latter had explained that she could locate the house where the dog lived, though she did not have the address."

Entered at the direction of Judge King with the concurrence of Judge Niemeyer and Judge Duncan.

For the Court

/s/ Patricia S. Connor
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-2481**

---

EILEEN MCAFEE,

            Plaintiff – Appellee,

        v.

CHRISTINE M. BOCZAR,

            Defendant – Appellant,

        and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

            Defendants.

---

**No. 13-1088**

---

EILEEN MCAFEE,

            Plaintiff – Appellee,

        v.

CHRISTINE M. BOCZAR,

            Defendant – Appellant,

        and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

            Defendants.

**No. 13-1356**

EILEEN MCAFEE,

　　　　　Plaintiff – Appellee,

　　v.

CHRISTINE M. BOCZAR,

　　　　　Defendant – Appellant,

　　and

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

　　　　　Defendants.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:11-cv-00646-REP-MHL)

Argued: October 30, 2013　　　　Decided: December 12, 2013

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Nos. 13-1356 and 13-1088 affirmed; No. 12-2481 vacated and remanded with instructions by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

**ARGUED:** Henry Keuling-Stout, KEULING-STOUT, PC, Big Stone Gap, Virginia, for Appellant. William H. Hurd, TROUTMAN SANDERS LLP, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael R. Ward, MORRIS & MORRIS, PC, Richmond, Virginia, for Appellant. Stephen C. Piepgrass, TROUTMAN SANDERS LLP, Richmond, Virginia, for Appellee.

KING, Circuit Judge:

Defendant Christine Boczar, a deputy sheriff of Powhatan County, Virginia, appeals the judgment of damages plus attorney's fees entered against her in the Eastern District of Virginia in this 42 U.S.C. § 1983 proceeding. Boczar presents two appellate issues: First, she contends that she is entitled to qualified immunity such that a trial should not have been conducted; and, second, she maintains that, even should the jury's verdict stand, the district court's award of $322,340.50 in attorney's fees to plaintiff Eileen McAfee is contrary to law. As explained below, we reject Boczar's qualified immunity contention and affirm the verdict of damages totalling $2943.60. We vacate the attorney's fee award, however, and remand for an award of $100,000, exclusive of costs.

I.

A.

On December 28, 2010, Eileen McAfee accompanied a friend to a residence in Powhatan County, Virginia, to inspect a dog that appeared to be in distress.[1] After securing permission from the

---

[1] Insofar as they relate to the qualified immunity issue, we recite the facts in the light most favorable to McAfee. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007). With respect to facts relating solely to the attorney's fee award, we accept the facts — unless clearly wrong — as they were set forth by the (Continued)

owner, McAfee examined the dog and concluded that it lacked appropriate shelter but was otherwise in good condition. McAfee then bought the animal a new doghouse and, on January 7, 2011, delivered it to the dog and its owner. While setting up the doghouse, McAfee sought to feed the pet a treat. Unfortunately, in its eagerness to eat the treat, the dog accidentally bit McAfee's hand, causing McAfee to seek medical treatment at a local hospital. The hospital reported McAfee's dog bite to the animal control authorities in Powhatan County.

Deputy Boczar, an animal control officer with the Powhatan County Sheriff's Office, received notification of McAfee's dog bite and began an investigation. On January 10, 2011, she inquired by telephone about the incident, asking McAfee where the dog was housed. McAfee, who was unfamiliar with Powhatan County, replied that she did not know the owner's address but could lead Boczar to the dog's location. Boczar declined McAfee's offer and ended the conversation, which was apparently the only exchange Boczar ever had with McAfee. Boczar thereafter contacted two other persons, further seeking to locate the dog. Both of those persons had spoken to McAfee

---

district court. See Plyler v. Evatt, 902 F.2d 273, 278 (4th Cir. 1990).

about the dog bite incident, but neither had sought to ascertain from McAfee the location of the dog.

Predicated on these conversations, Boczar determined that McAfee had refused to disclose to the authorities the location of the dog, in violation of Virginia Code § 18.2-313.1, which prohibits the withholding of information about possibly rabid animals. As a result, on January 13, 2011, Boczar secured an arrest warrant for McAfee from a state court magistrate. McAfee was arrested on the warrant and transported to the County Sheriff's office. The magistrate thereafter released McAfee on bond, and a one-day jury trial was conducted in magistrate court on May 27, 2011. At its conclusion, McAfee was acquitted.

## B.

On September 28, 2011, the underlying complaint was filed in the Eastern District of Virginia, alleging that Boczar had arrested McAfee without probable cause. The complaint made three separate claims: first, a claim under 42 U.S.C. § 1983 for violation of McAfee's Fourth Amendment rights (Count I); second, a claim for malicious prosecution under state law (Count II); and, third, a false imprisonment claim under state law (Count III). In responding to McAfee's complaint, Boczar moved for summary judgment on the basis of qualified immunity, which the court promptly denied. Boczar also sought the dismissal of Count III under Rule 50 of the Federal Rules of Civil Procedure,

5

which the court granted. A jury trial was thereafter conducted in Richmond on the allegations in the first two counts of the complaint.

At the trial's conclusion on July 6, 2012, the jury returned a verdict for McAfee on the § 1983 claim and in favor of Boczar on Count II. At trial, McAfee requested both compensatory and punitive damages as "determined by the evidence." McAfee v. Boczar, 906 F. Supp. 2d 484, 488 (E.D. Va. 2012) (the "Opinion"). In closing argument to the jury, counsel for McAfee summed up her claims thusly: "[M]oney can never really compensate for what has been done here, but money is the only remedy the law has to offer. So what is the right number to compensate Ms. McAfee? Is it $50,000? Is it $500,000? Something else? Is it something more? You decide." J.A. 339.[2] The jury verdict found that McAfee was entitled to recover $2943.60 in stipulated out-of-pocket expenses relating to her state court defense, which the jury awarded on her § 1983 claim. The jury declined to otherwise award McAfee additional compensatory or any punitive damages.

---

[2] Our citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal. As it pertains to the issues herein, the published Opinion addressed and disposed of McAfee's § 1988 fee petition without revisiting the district court's decision to deny Boczar qualified immunity.

After the jury returned its verdict, Boczar made a renewed motion for qualified immunity on the § 1983 claim. The district court again denied the motion, explaining that Boczar's conduct in arresting McAfee lacked probable cause and "fails to meet the test of objective reasonableness" required for the protection of qualified immunity. McAfee v. Boczar, No. 3:11-cv-00646, 2012 WL 3525619, at *2 (E.D. Va. Aug. 15, 2012). In so ruling, the court focused on Boczar having secured McAfee's arrest warrant on the basis of false statements. Indeed, Boczar represented to the magistrate that McAfee "refuses" to give any information about the dog's whereabouts. Id. at *3. At trial, however, it was established that this statement was untrue. Boczar testified that, in her only conversation with McAfee, the latter had explained that she could locate the house where the dog lived, though she did not have the address. Neither of the other two persons Boczar interviewed about the dog bite incident told Boczar that McAfee had refused to give the location of the dog. As a result, the court concluded that Boczar lied to the magistrate to secure the arrest warrant, and that such conduct "does not give rise to qualified immunity." Id.

After the court accepted the verdict and entered judgment thereon, McAfee filed a petition pursuant to 42 U.S.C. § 1988, seeking a total of $365,027 in attorney fees, plus $10,305.51 in costs (the "Fee Petition"). Though acceding to the full amount

7

of the documented costs, Boczar complained that the requested fees were unreasonable and countered with a fee proposal awarding $15,000. The district court then referred the Fee Petition to a federal magistrate judge for settlement negotiations. A settlement conference was conducted on September 19, 2012, but the parties were unable to reach an accord. The magistrate judge reported to the district court that the state's Division of Risk Management, which was responsible for the damages award, had refused to negotiate in good faith.

Because the settlement negotiations failed, the district court independently evaluated the Fee Petition to determine whether the request was reasonable under 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee" with respect to a claim, inter alia, made pursuant to § 1983. Applying the familiar "lodestar" method, the court granted the Fee Petition in part. By its Opinion, the court determined that the hourly rates of McAfee's lawyers were reasonable and that, applying a ten percent reduction in the hours logged to account for "block billing," the amount of time devoted to the case by counsel was also reasonable. As a result, the court awarded McAfee $322,340.50 in attorney's fees,

8

plus the $10,305.51 in agreed costs.  See McAfee, 906 F. Supp. 2d at 505.

Boczar has timely appealed, challenging the district court's denial of qualified immunity and its related decision to conduct a trial, and also seeking to vacate the attorney's fee award.  We possess jurisdiction pursuant to 28 U.S.C. § 1291.[3]

II.

A.

McAfee alleged that Boczar violated her Fourth Amendment rights by subjecting her to arrest without probable cause.  In seeking relief from McAfee's allegations of liability pursuant to 42 U.S.C. § 1983, Boczar unsuccessfully asserted qualified immunity.  We review de novo a district court's denial of

---

[3] Boczar filed three notices of appeal.  The first (No. 12-2481) was from the district court's November 2, 2012 Order granting McAfee's initial fee petition and awarding her $332,646.01.  The second (No. 13-1088) was from the court's Order filed December 19, 2012, disposing of McAfee's supplemental petition in which she requested an additional $59,021.00 in attorney's fees incurred post-trial, including fees for preparation of the initial fee petition.  The court granted the supplemental petition, but, after substantial reductions in the amount claimed, awarded only $12,628.  The supplemental award has gone virtually unchallenged here, and we therefore affirm it.  The third notice of appeal (No. 13-1356) was from the court's judgment of February 22, 2013, awarding McAfee $2943.60 in damages.  The court had delayed its entry of judgment pending final resolution of Boczar's renewed qualified immunity defense.

9

qualified immunity.  Merchant v. Bauer, 677 F.3d 656, 661 (4th Cir. 2012).[4]

In this case, Boczar invoked qualified immunity in the district court prior to trial by way of a summary judgment request.  In some circuits, a defendant's failure to follow the procedures set forth in Rule 50 — beginning with a Rule 50(a) motion and then renewing the contention under Rule 50(b) — constitutes a waiver of the qualified immunity claim.  See, e.g., Parker v. Gerrish, 547 F.3d 1, 12 (1st Cir. 2008) ("[W]e have held that even if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion."); Sykes v. Anderson, 625 F.3d 294, 304 (9th Cir. 2010) ("The Defendants' failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) on the grounds of qualified immunity precluded them from making a post-

---

[4] Boczar has proceeded with her qualified immunity argument in an arguably unconventional manner.  She first asserted qualified immunity in a motion for summary judgment under Rule 56.  After the district court denied the motion, McAfee's case proceeded to trial.  Boczar did not raise qualified immunity again until after the jury verdict.  Although a post-verdict motion for judgment as a matter of law is acceptable under Rule 50(b), it is usually preceded by one or more motions under Rule 50(a), typically made at the close of the plaintiff's case-in-chief and again after all the evidence has been presented.  See Fed. R. Civ. P. 50(a) (authorizing a party to seek judgment as a matter of law at any time before the case is submitted to the jury).  A party is permitted to renew a Rule 50(a) motion after trial.  See Fed. R. Civ. P. 50(b).

verdict motion under Rule 50(b) on that ground."). Here, however, we need not decide whether Boczar's unusual approach has worked a waiver of qualified immunity, because we are amply satisfied that no such immunity was warranted.

Qualified immunity serves to protect a government official from liability for civil damages unless the facts alleged show a violation of a clearly established constitutional right. Merchant, 677 F.3d at 662. Here, McAfee asserts her right under the Fourth Amendment to be free from arrest absent probable cause to believe that she had committed a crime. We have consistently explained that probable cause has been shown "when the facts and circumstances within an officer's knowledge — or of which he possesses reasonably trustworthy information — are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000).

In this situation, it is clear that Boczar lacked sufficient knowledge about McAfee's dog bite to reasonably believe that McAfee contravened Virginia law. Boczar had interviewed only three persons, and none had suggested that McAfee was refusing to disclose the dog's location. With such limited knowledge, a law officer of reasonable caution would not believe that McAfee had violated § 18.2-313.1. Indeed, that Boczar made false statements to the state magistrate in seeking

11

McAfee's arrest suggests that Boczar understood that the evidence failed the probable cause standard.

By securing a warrant that lacked adequate evidentiary support, Boczar infringed McAfee's Fourth Amendment right to be free from capricious arrest. And this constitutional right is clearly established. See Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007) ("Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." (internal quotation marks omitted)). Therefore, Boczar cannot shield herself from damages liability by invoking qualified immunity.

B.

The more difficult issue in this appeal is whether the district court's § 1988 attorney's fee award is "reasonable." The threshold requirement for such an award is, of course, that the § 1983 plaintiff be a "prevailing party." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The designation of a party as "prevailing" is a legal question that we review de novo. See Grissom v. The Mills Corp., 549 F.3d 313, 318 (4th Cir. 2008). For purposes of § 1988, "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded," is the prevailing party. Id. More specifically, a party has prevailed if there has been a "material alteration of the legal

12

relationship of the parties," and there is a "judicial imprimatur on the change." Id.

Neither party disputes the proposition that McAfee was the prevailing party on the § 1983 claim. The jury's verdict of $2943.60 created a material alteration of the legal relationship between McAfee and Boczar, and the district court's power to enforce that award provides the requisite judicial imprimatur. Because McAfee is a prevailing party under § 1988, we must determine whether the attorney's fee award is a reasonable one.

C.

We review for abuse of discretion a district court's award of attorney's fees, but, we will only reverse such an award if the district court is "clearly wrong" or has committed an "error of law." Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998). The proper calculation of an attorney's fee award involves a three-step process. First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19

13

(5th Cir. 1974).[5]  Id. at 243–44.  Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones."  Id. at 244.  Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."  Id.  Although the district court in this case adequately performed the first two steps, it erred on the third.  That is, it overstated McAfee's success.[6]

---

[5] Our Court has characterized the twelve Johnson factors as follows:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors for determining the reasonableness of attorney's fees that Fifth Circuit identified in Johnson).

[6] Boczar argues on appeal that McAfee secured only a "nominal" award from the jury, and so the district court should not have awarded an attorney's fee at all.  This contention fails, however, because the damages award, though small in dollar amount, is not nominal.  An award of nominal damages signifies that a plaintiff has established a violation of his
(Continued)

14

1.

The Supreme Court has indulged a "strong presumption" that the lodestar number represents a reasonable attorney's fee. The Court recently explained that this presumption can only be overcome "in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." See Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010). Consistent with the prescribed methodology, the district court addressed the attorney's fee issue by calculating the lodestar number. In so doing, the court relied on the Johnson factors to determine the applicable multipliers.

The Opinion's application of the Johnson factors warrants a brief discussion. As the district court recognized, we have reviewed attorney's fee awards primarily by use of the lodestar method, with "substantial reliance" on the Johnson factors, "sometimes to inform the calculation of the lodestar, sometimes to make upward or downward adjustments to it, and sometimes for both purposes." 906 F. Supp. 2d at 490. The Opinion explained,

---

right but has not proved actual loss. See Farrar v. Hobby, 506 U.S. 103, 112 (1992). Here, the damages awarded represented the "entirety of McAfee's out-of-pocket expenses." McAfee, 906 F. Supp. 3d at 503. As such, the jury's award cannot be classified as nominal.

15

however, that unquestioning reliance on Johnson is not justified in the post-Perdue world because that Supreme Court decision "teaches so clearly that departures from the lodestar figure are to occur rarely and only in extraordinary cases." Id. at 491. Moreover, as the Opinion relates, the Perdue Court emphasized that "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." Id. (quoting Perdue, 130 S. Ct. at 1673). Accordingly, the court determined that its consideration of certain of the Johnson factors was foreclosed by the lodestar calculation. See id. at 490.

At the outset, the district court decided that the number of hours reasonably expended by McAfee's lawyers — the first multiplier in the lodestar calculation — encompasses at least three Johnson factors — Factor 1 (time and labor expended), Factor 2 (novelty and difficulty of question raised), and Factor 7 (time limitations imposed by the client or circumstances). See id. at 492. As such, those three factors did not warrant further consideration in calculating the attorney's fee award. The court then explained that the reasonable hourly rate — the second multiplier in the lodestar calculation — subsumes five additional Johnson factors: Factor 3 (skill required to properly perform legal services); Factor 4 (attorney's opportunity cost); Factor 5 (customary fee); Factor 6 (attorney's expectations at outset of litigation); and Factor 9

16

(experience, reputation, and ability of attorney). See id. As a result, according to the court, those five factors also collapse into the lodestar calculation. Ultimately, pursuant to the court's lodestar analysis, Perdue reserved four Johnson factors for use in adjusting the lodestar fee amount: Factor 8 (amount in controversy and results obtained); Factor 10 (undesirability of case within legal community); Factor 11 (nature and length of professional relationship between attorney and client); and Factor 12 (attorneys' fee awards in similar cases). See id.

We have indeed recognized that, consistent with the district court's analysis, "to the extent that any of [the Johnson factors] has already been incorporated into the lodestar analysis, we do not consider [those factors] a second time." E. Associated Coal Corp. v. Dir., OWCP, 724 F.3d 561, 570 (4th Cir. 2013) (citing Perdue, 130 S. Ct. at 1673). We have never ruled, however, that when certain Johnson factors have merged into the lodestar calculation, they are not to be otherwise considered to adjust the lodestar amount. Although some of our sister circuits agree that any Johnson factor subsumed in the lodestar calculation should in no other way affect the determination of an attorney's fee award, few have explicitly identified specific

17

factors to which such a principle might apply.[7] For example, the Fifth Circuit has held that a bankruptcy court abused its discretion in using four of the <u>Johnson</u> factors "to justify its substantial upward departure from the lodestar" because the lodestar amount already accounted for those factors. <u>See</u> <u>Matter of Fender</u>, 12 F.3d 480, 488 (5th Cir. 1994). And the Second Circuit recently held that a district court erred in adjusting the initial lodestar figure on the basis of <u>Johnson</u> factors already included. <u>See</u> <u>Millea v. Metro-N. R.R. Co.</u>, 658 F.3d 154, 167–68 (2d Cir. 2011).

In any event, we need not further assess or identify which of the <u>Johnson</u> factors might be subsumed by the lodestar calculations. In its <u>Perdue</u> decision, the Supreme Court was addressing the enhancement of a lodestar attorney's fee. 130 S. Ct. at 1673. In this case, however, the district court did not enhance the lodestar fee calculation — it simply reduced that

---

[7] At least three of our sister circuits have also evaluated the relationship between <u>Perdue</u> and <u>Johnson</u>. <u>See, e.g.</u>, <u>Black v. SettlePou, P.C.</u>, 732 F.3d 492, 502 (5th Cir. 2013) ("The lodestar may not be adjusted due to a <u>Johnson</u> factor that was already taken into account during the initial calculation of the lodestar."); <u>Millea v. Metro-N. R.R. Co.</u>, 658 F.3d 154, 167 (2d Cir. 2011) ("[A] court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."); <u>Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.</u>, 616 F.3d 1098, 1103 (10th Cir. 2010) (determining that <u>Perdue</u> "appears to significantly marginalize the twelve-factor <u>Johnson</u> analysis").

calculation by $42,600. Predicated on these distinctions, we limit our analysis to ensuring that the court's application of the Johnson factors was a reasonable one and that it did not inappropriately weigh any particular factor.

Returning to step one — calculation of the lodestar fee amount — we will not disturb the district court's determination of the lodestar multipliers. We explain further below.

a.

In her Fee Petition, McAfee requested an award for 996.7 hours of legal work by her lawyers. McAfee, 906 F. Supp. 2d at 496. The district court reduced the hours of her two lead attorneys by ten percent each, because they had used a "block billing" system (lumping tasks together in time entries rather than making such entries task-by-task). Id. at 500. The court also eliminated the hours recorded by the "client originator" because his time overlapped that of the lead attorneys. Id. at 501. Neither of the parties disputes these calculations, and they are not further addressed.

In determining whether the time expended by McAfee's lawyers was reasonable, the Opinion referred to Boczar's unwillingness to entertain settlement on the attorney's fee issues. See McAfee, 906 F. Supp. 2d at 502. The court observed that failure to contemplate a settlement strategy "makes for expensive litigation," and the defendant must bear the

19

consequences.  Id. at 501–02.  Boczar asserts that the court, by taking her settlement position into account, abused its discretion and punished Boczar for her recalcitrance.  Boczar's argument falls short in two respects.  First, a district court "has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so."  Thomas v. Nat'l Football League Players Ass'n, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001); see also Sands v. Runyon, 28 F.3d 1323, 1334 (2d Cir. 1994) (concluding that a district court can consider settlement offers in making a fee award).  Second, although the court expressed disapproval of Boczar's apparent failure to seriously engage in settlement negotiations, the court did not alter its lodestar calculations to reflect that disapproval.  The court simply observed that any prolonged litigation caused by a failure to settle would be "subsumed" in the time component of the lodestar calculation.  McAfee, 906 F. Supp. 2d at 502 n.17.  In other words, the court's assessment of the settlement negotiations could not have had a measurable impact on the lodestar calculation.  In these circumstances, the court did not abuse its discretion in calculating the hours expended by McAfee's lawyers.

b.

McAfee's lead counsel charged an hourly rate of $585, and his senior associate charged $365 per hour.  McAfee, 906 F.

20

Supp. 2d at 496. As the fee applicant, McAfee bore the burden of establishing the reasonableness of those hourly rates. See Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). A fee applicant is obliged to show that the requested hourly rates are consistent with "the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award." Id. The evidence we have deemed competent to show prevailing market rates includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson, 560 F.3d at 245.

Boczar contends that McAfee failed to provide the essential evidence on the hourly rate issue. The opinion, however, concluded that the affidavits of two experts were sufficient to substantiate the hourly rates of McAfee's lawyers, and so "McAfee has more than met her burden of establishing the reasonable hourly rate for her counsel." McAfee, 906 F. Supp. 2d at 496. Although those rates would appear excessive to almost any lay observer, and some members of the judiciary would deem them exorbitant, the district court's findings to the contrary are entitled to our deference. As a result, we are

21

unable to disturb its finding that the requested hourly rates are reasonable.[8]

2.

After determining that the hours expended and the attendant rates requested by a lawyer for a prevailing party are reasonable, a court is obliged to "subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." Grissom, 549 F.3d at 321. Of the three counts alleged, McAfee prevailed on solely her § 1983 claim, and then only with respect to a single category of damages, that is, general damages reimbursing McAfee for her out-of-pocket expenses. The other two categories of damages McAfee sought in connection with her § 1983 claim — special damages plus punitive damages — were wholly rejected.[9]

---

[8] We observe that the hourly rates of court-appointed counsel in federal criminal cases are substantially less than those being sought here. Compensation paid to appointed counsel for time expended in or out of court or before a magistrate judge may not exceed $125 per hour. See 7A Admin. Office of U.S. Courts, Guide to Judiciary Policy § 230.16(a) (2013). Furthermore, the maximums for representation of a criminal defendant in a federal felony case are $9700 for the trial court level and $6900 for the appeal. Id. § 230.23.20. Viewed from that perspective, McAfee's lawyers may be said to have received a hefty premium for their legal services.

[9] See Slaughter v. Valleydale Packers, Inc., of Bristol, 94 S.E.2d 260, 266 (Va. 1956) (reciting that "there are two general classes of compensatory damages . . . : (1) general damages, or those which the law presumes to be the natural, proximate, and necessary result of the [tort]; and (2) special damages, or (Continued)

By its Opinion, the district court agreed with McAfee's lawyers that a six percent reduction for prevailing on one of three counts in the complaint was a reasonable reduction because McAfee's counsel "identified the work that was performed in furtherance of the unsuccessful counts" and "deducted those hours, on a line-by-line basis, from the work performed." McAfee, 906 F. Supp. 2d at 497. Moreover, the Opinion explained that the three counts in the complaint involved a common core of facts, and therefore "[m]uch of counsel's time [was] devoted generally to the litigation as a whole." Id. at 502 (quoting Hensley, 461 U.S. at 435). Reducing the number of hours expended by six percent and multiplying it by the hourly rate, the court calculated McAfee's lodestar fee as $322,340.50.

We will not dispute the district court's six percent reduction to account for the commonality of effort expended on unsuccessful Counts II and III. We are concerned, however, that

those which, although a natural and probable consequence thereof, are not assumed to be necessary or inevitable, and must be shown by allegation and proof" (citation and internal quotation marks omitted)). McAfee's complaint and contentions at trial identified three categories of damages being sought under § 1983: (1) general compensatory damages for out-of-pocket expenses incurred in defending state criminal charges; (2) special compensatory damages for deprivation of liberty, humiliation and embarrassment, inconvenience, and mental anguish; and (3) punitive damages. See J.A. 28–29 & 338–39. The jury instructions conveyed these categories of potential damages to the jury. See id. at 353.

the court failed to properly consider McAfee's failure to receive an award on her § 1983 claim, except for her undisputed out-of-pocket expenses. We will further explain those concerns.

3.

In the final step before making an attorney's fee award under § 1988, a district court must "consider the relationship between the extent of success and the amount of the fee award." The court will reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439–40. Indeed, the Supreme Court has recognized that the extent of a plaintiff's success is "the most critical factor" in determining a reasonable attorney's fee under 42 U.S.C. § 1988. Id. at 436. What the court must ask is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. at 434.

Although McAfee's success in recovering her general out-of-pocket expenses must be accorded respect, it does not justify a fee award of over $300,000 — approximately 109 times the verdict — when McAfee's failure to recover any special compensatory damages, or any punitive damages at all, is taken into account. Though Congress intended § 1988 fee awards to be "adequate to attract competent counsel," it also wanted to avoid "produc[ing] windfalls to attorneys." City of Riverside v. Rivera, 477 U.S.

24

561, 580 (1986). The district court's erroneous view of McAfee's success — best illustrated by comparing McAfee's lofty expectations with the jury's paltry damages award — produced an excessive fee award that would, in our view, constitute a windfall.

### a.

We have recognized that, "[w]hen considering the extent of the relief obtained, we must compare the amount of damages sought to the amount awarded." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005). If a § 1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive. See Farrar v. Hobby, 506 U.S. 103, 114 (1992). For example, in Farrar, the plaintiffs sought $17 million in compensatory damages, but the jury awarded only the meager sum of one dollar. Id. Because the district court failed to compare the plaintiff's damages request with the nominal jury verdict, the Court reversed a fee award of $280,000. Id. at 115–16. In her concurrence, Justice O'Connor elaborated: "[A] substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Id. at 121 (O'Connor, J., concurring) (emphasis added). In Farrar, the plaintiff "asked for a bundle" ($17 million) and "got a pittance" ($1). Id. at 120. As such, the

25

Court ruled that any award of attorney's fees was unjustified. Id. at 116.

To accurately gauge McAfee's success, the district court, in accordance with Mercer and Farrar, should have compared what she sought with what was awarded. Although McAfee downplays her attempts to recover anything beyond her out-of-pocket expenses, the record below suggests her pursuit of a bigger payday was sincere, even pointed. Indeed, McAfee conceded at trial that "[t]here are out-of-pocket expenses[, b]ut that's not what this case is really about." J.A. 338. In particular, McAfee requested special compensatory damages for "deprivation of liberty," "great inconvenience," "great insult and humiliation," and "mental anguish." Id. at 338–39. Counsel for McAfee rhetorically inquired of the jury, "What is the right number to compensate Ms. McAfee? Is it $50,000? Is it $500,000? Something else? Is it something more?" Id. at 339 (emphasis added). McAfee's arrest, according to her lawyers, caused her to lose weight and forgo sleeping, diminishing her energy. See id. McAfee's lawyers therefore strongly encouraged the jury to compensate her for these special injuries. See id. In the face of McAfee's effort to secure a damages verdict of $500,000 or even "something more," the jury awarded only $2943.60.

It is also important to our analysis that McAfee strongly advocated for a punitive damages award. At trial, McAfee's

26

lawyer supported the effort by stressing that "deprivation of [her] liberty" calls for "some <u>punishment</u> upon the wrongdoer." J.A. 338–39 (emphasis added). And the jury fully understood that it could award punitive damages, for both punishment and deterrence. See J.A. 355–56. But, as Justice Powell explained in a § 1988 setting, "[w]here recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." <u>Rivera</u>, 477 U.S. at 585 (Powell, J., concurring). Put simply, the jury verdict was puritanically modest, and the attorney's fee award fails to reflect that reality.

b.

In justifying its award of attorney's fees, the Opinion accorded great weight to the deterrent effect of the judgment and the verdict's reaffirmation of McAfee's Fourth Amendment rights. See <u>McAfee</u>, 906 F. Supp. 2d at 505. According to the Opinion, the verdict "vindicated important civil and constitutional rights that cannot be valued solely in monetary terms." <u>Id.</u> at 503 (quoting <u>Rivera</u>, 477 U.S. at 574). In so ruling, the court explained that "the hours expended were reasonable and necessary to vindicate, for McAfee and other citizens of Virginia, a most important right secured by the Fourth Amendment of the United States Constitution." <u>Id.</u>

27

The jury's forbearance of a punitive damages award, however, reveals that deterrence and vindication may not be so important here.  The point of punitive relief is to "punish what has occurred and to deter its repetition."  Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21 (1991).  Because the jury did not approve punitive damages, the court's reliance on deterrence and vindication in its calculation of McAfee's success is substantially undermined.[10]  Cf. Rivera, 477 U.S. at 595 (Rehnquist, J., dissenting) ("In short, this case shares none of the special aspects of certain civil rights litigation [that] would justify an award of attorney's fees totally divorced from the amount of damages awarded by the jury.").

The Supreme Court has rejected the proposition that a § 1988 fee award must invariably be proportionate to the amount of damages a civil rights plaintiff actually recovers.  See Rivera, 477 U.S. at 574.  In Rivera, the Court affirmed an attorney's fee award of $245,456, which was slightly in excess

_____

[10] In Lewis v. Kendrick, 944 F.2d 949 (1st Cir. 1991), the plaintiff sought $300,000 in damages and only recovered $1000. Id. at 951.  The plaintiff initially requested $132,778 in attorney's fees, id. at 951 n.1, of which the district court awarded $49,685.90.  Id. at 951.  The court of appeals rejected the fee award, concluding that "[t]o turn a single wrongful arrest into a half year's work, and seek payment therefor, with costs, amounting to 140 times the worth of the injury, is, to use a benign word, inexcusable."  Id. at 956.  The Court conceded, however, that "had there been punitive damages found," attorney's fees "would have been another matter."  Id. at 954.

28

of seven times the plaintiff's recovery of compensatory and punitive damages, amounting to $33,350. See id. at 565-67. In this case, however, we cannot ignore the pronounced disproportionality between the verdict for less than $3000, and the fee award more than 100 times that amount. Such a disparity may well be unprecedented in this Circuit, notwithstanding Mercer, which affirmed an award of attorney's fees amounting to almost $350,000 on a verdict for nominal compensatory damages of just $1. The plaintiff in Mercer, though, was also found entitled to $2,000,000 in punitive damages, see 401 F.3d at 202, rendering the fee award a fraction — not a multiple — of the damages obtained.[11]

Although a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees, a lack of litigation success will. In short, the limited success achieved by McAfee — reflected by the jury's decision not to award anything for deprivation of liberty, great inconvenience, great insult and humiliation, and mental anguish, or make an award of punitive damages — undermines the attorney's fee award being appealed.

---

[11] The punitive damages award in Mercer was later vacated on the basis of Barnes v. Gorman, 537 U.S. 181 (2002), because punitive damages are not legally available for private actions under Title IX. Mercer, 401 F.3d at 202.

29

Because the district court overstated McAfee's degree of success, it erred in not making an attorney's fee award that would properly reflect her success in this case. Under such circumstances, we typically would remand this case for further work by the district court and the lawyers. We have also recognized, however, that "[a] request for attorney's fees should not result in a 'second major litigation.'" Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 181 (4th Cir. 1994) (citing Hensley, 461 U.S. at 437 n.12). Consistent with Rum Creek, and to avoid further expense and the nonessential use of judicial resources associated with remand proceedings and other appeals, we are satisfied to vacate the attorney's fee award and direct that it be reduced by approximately two-thirds, that is, to $100,000, exclusive of costs. See id. (modifying award of attorney's fees "[t]o avoid further litigation expenses that would follow a remand and the risk of yet a fourth appeal").

III.

Pursuant to the foregoing, we affirm the judgment with respect to the verdict, vacate the attorney's fee award, and

30

direct that an attorney's fee award of $100,000, exclusive of costs, be entered by the district court on remand.

No. 13-1356 <u>AFFIRMED</u>
No. 13-1088 <u>AFFIRMED</u>
No. 12-2481 <u>VACATED AND</u>
<u>REMANDED WITH INSTRUCTIONS</u>

31