**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1728**

GREGORY RANDOLPH, on his own behalf and on behalf of all others similarly situated; DANA BROWN; TWANDA BANISTER; GREGORY EUBANKS; ARTHUR HINNANT; EZRA CHARLES CALLOWAY; RHASAAN DARK; RODNEY WILLIAMS; KENNETH JACKSON; GEORGE MILES; JAMAL DREW; KENNETH SEARLES; DEXTER ANDERSON; BERNARD BROWN; NATESHIA DECHE BEASLEY; EUNICE MELTON; ROBIN MELTON; EARNEST LEE ALLEN, JR.; SHANINA WASHINGTON; MELVIN L. WEBB-BEY; SYLVIOUS WILLIAMS; FASIL ALEMAYEHU; AMISHA BENNETT; EDWARD ROBINSON; DANIELLE SMITH; RONALD WALL; ROY BENNETT; MELQUIN GAINO; LESLIE GROSS; ANTONIO WALL; LAMONT NEWTON; ANTHONY WILLS; LAMARR YOUNG; MICHELLE BENNETT; RODNEY BROOKS; LARRY JEFFERSON; LENARD PRINGLE; JUSTIN FOSTER; EDDIE PERKINS; SEAN E. PITTMAN; JIMMIE MISSOURI; KEVIN SORRELL; TERENCE BROWN; TERRANCE DOVE; ERIC SHEFFEY; TERRELL TWITTY; JEFF JORDAN; SAMUEL HEGWOOD; JOHNNY BOYKIN; BERNARD BENNETT; LAVELLE GANT; DONALD RAY JONES; CORNELIUS REDFEARN; DARNELL MADDOX; RONALD YOUNG; CALVIN GORHAM,

     Plaintiffs - Appellees,

  and

VAN EUBANKS; DAVID PETERSON; JACQUELINE RIDLEY; RALEIGH WALL; MICHAEL ALLEN; ANDRE ADAMS; REGINA FREEMAN; ALONZO E. MUDD; ROBERT L. WALL, JR.; WILLIAM HOLLAND,

     Plaintiffs,

    v.

POWERCOMM CONSTRUCTION, INC.; DAVID KWASNIK, SR.,

     Defendants - Appellants.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge. (8:13-cv-01696-GJH)

Argued: May 8, 2019                                          Decided: July 11, 2019

Before AGEE, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded with instructions by unpublished per curiam opinion.

**ARGUED:** Geoffrey M. Bohn, BOHN & BATTEY, PLC, Arlington, Virginia, for Appellants. Nicholas Woodfield, EMPLOYMENT LAW GROUP, P.C., Washington, D.C., for Appellees. **ON BRIEF:** Robert A. Battey, BOHN & BATTEY, PLC, Arlington, Virginia, for Appellants. R. Scott Oswald, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

PowerComm Construction, Inc., and its owner, David Kwasnik, Sr., ("Appellants") appeal the district court's order awarding Appellants' employees or former employees ("Appellees") -- the plaintiffs below -- $177,756.50 in attorney's fees. On appeal, Appellants contend the district court abused its discretion by failing to (1) account for ten unsuccessful plaintiffs in its calculation of the fee award; and (2) reduce the fee award in light of Appellees' relative lack of success, compared to the damages originally sought. For the reasons set forth below, we conclude the district court abused its discretion in failing to account for the overall lack of success in its calculation of the attorney's fees award. Therefore, we vacate the attorney's fees award and remand with instructions for the grant of a suitable award as calculated herein.

I.

On June 12, 2013, Gregory Randolph initiated this lawsuit by filing a proposed class action in the United States District Court for the District of Maryland pursuant to the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Randolph alleged that Appellants, his former employers, failed to appropriately pay its employees for overtime work. In the complaint, Randolph sought relief in the form of unpaid overtime wages with interest, liquidated damages, attorney's fees, and a declaration that Appellants had violated both the MWHL and the FLSA.

## A.

*Damages Sought*

On March 26, 2014, the district court conditionally certified the action as a collective action pursuant to the FLSA. And, by July 2014, 64 of Appellants' employees or former employees joined the suit as plaintiffs based, in part, on the representations of Appellees' counsel regarding potential outcomes.[1] Initially, Appellees sought $1,745,875.65 in damages, including $581,958.55 in unpaid overtime wages and $1,163,917.10 in liquidated damages.[2] But, on September 5, 2014 -- just six months after the class was conditionally certified -- Appellees' counsel filed a second amended Rule 26(a) disclosure, in which they dropped their damages demand by approximately one million dollars and asserted entitlement to only $789,916.23 in damages, including $526,610.82 in liquidated damages and $263,305.41 in unpaid wages.

---

[1] For example, Gregory Randolph -- one of the two original plaintiffs -- testified in the settlement hearing that he hired Appellees' counsel to proceed with litigation rather than "going . . . with the labor board [who would] . . . make [Appellants] pay me right there and then" because Appellees' counsel "told [Randolph] he was going to file for pain and suffering and all that stuff for me." J.A. 107. Later, prior to the settlement, Appellees' counsel began "calling [Randolph's] mother and . . . sister, asking would [Randolph] take [$]7,500." *Id.* According to Randolph, that was substantially "less than what [he was] supposed to originally get." *Id.* at 107–08. Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] In a case such as this, if the plaintiffs can establish that their employer failed to pay overtime wages in bad faith, the plaintiffs may obtain liquidated damages -- treble damages pursuant to the MWHL, and double damages pursuant to the FLSA. *See* Md. Code Ann., Lab. & Empl. § 3-507.2(b); 29 U.S.C. § 260.

In early 2015, the parties filed cross motions for summary judgment. Appellees sought nonconditional certification of the collective action based on the similarly situated nature of the individual members of the class. Appellants sought decertification and the dismissal of 17 plaintiffs. Appellants argued that the claims of the 17 identified plaintiffs fell outside of the statute of limitations. On August 21, 2015, the district court dismissed ten plaintiffs, concluding their claims were barred by the statute of limitations. Simultaneously, the district court granted the remaining 55 plaintiffs' motion for nonconditional certification of a collective action, finding that the class members were similarly situated, and that fairness and procedural considerations favored certification.

B.

*First Attorney's Fees Award*

In April 2016, the district court approved the parties' proposed settlement. The parties agreed to settle the matter for $100,000 exclusive of attorney's fees and costs.[3] Subsequently, Appellees' counsel filed a motion seeking an attorney's fees award of $227,577 -- more than double the amount the 55 remaining plaintiffs received in the settlement. Ultimately, the district court awarded Appellees $183,764 in attorney's fees.

The district court noted, first, it was not required to subtract fees proportionally for unsuccessful *parties*, only unsuccessful claims. It also reasoned that "while ten out of 65 plaintiffs were dismissed on summary judgment, the overall recovery of $100,000[]

_____

[3] Of note, this settlement amount is $689,000 less than the second amended disclosure demand and $1,645,875 less than the original complaint demand.

5

represents thirty-eight percent[4] of their claimed damages that fall within the statute of limitations." *Randolph v. PowerComm Constr., Inc.*, No. GJH-13-01696, 2016 WL 6462167, at *6 (D. Md. Oct. 31, 2016) (internal quotation marks omitted). Finally, the district court declined to reduce the attorney's fees award because it did "not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees awards in cases of more moderate amounts." *Id.* at *7.

## C.

### *First Appeal*

Appellants appealed the initial attorney's fees award. On October 31, 2017, we vacated the district court's first fee award and remanded for further proceedings. *See Randolph*, 715 F. App'x at 227. Specifically, we held the district court "misapplied the fee analysis framework" when it "relied on the overall outcome of the litigation to justify not reducing the award for the unsuccessful claims" because "the relief obtained was more appropriately considered after deducting the time spent by [Appellees'] counsel pursuing unrelated, unsuccessful claims." *Id.* at 231. We further concluded the district court had erroneously characterized the percentage of damages allegedly received by Appellees. Therefore, we instructed the district court to reconsider its findings. *See id.* at

---

[4] It remains unclear precisely how the district court reached this figure, but, as we previously observed, "[t]he district court seems to have arrived at the 38% figure by either relying on the settlement discount percentage or by dividing the settlement amount ($100,000) by the amount of unpaid wages claimed in Plaintiffs' second amended Fed. R. Civ. P. 26(a) . . . disclosure ($263,305)." *Randolph v. PowerComm Constr., Inc.*, 715 F. App'x 227, 231 (4th Cir. 2017).

6

231–32 ("[T]he court certainly erred in relying on the 38% figure to support its reasoning. Therefore, on remand, the district court should also reconsider its finding that the relief obtained represents 38% of the relief claimed by [Appellees] for claims that accrued within the statute of limitations."). Further, we specifically observed that Appellees had actually recovered only 13% of the damages sought, considering the settlement amount of $100,000 and the total alleged damages -- including liquidated damages -- of $789,916. Accordingly, we vacated the award and remanded to the district court for further proceedings consistent with our opinion.

D.

*Proceedings on Remand*

On remand, the district court issued a letter order scheduling a hearing and ordering the parties to provide any additional documentation on two issues: first, how the district court should "appropriately deduct from the proposed award time spent by [Appellees'] counsel pursuing the claims of the 10 dismissed plaintiffs," J.A. 142; and, second, how our determination that Appellees only recovered 13% of the damages initially sought should impact the district court's "determination that [Appellees'] counsel were successful in their representation," *id.*

E.

*Second Attorney's Fees Award*

After hearing arguments on the matter, the district court issued a June 1, 2018 memorandum opinion and order awarding Appellees $177,756.50 in attorney's fees -- $6,007.50 less than the previous award.

7

To arrive at this amount, the district court deducted billing entries that expressly mentioned an unsuccessful plaintiff. But, the district court again declined to deduct time billed that "was spent on work product that applied to the entire class -- *e.g.*, drafting the Complaint, drafting responses to dispositive motions, etc. -- which constituted the type of 'intertwined' work for which the Court need not reduce the amount of fees awarded." J.A. 214. As to the work done at summary judgment -- wherein Appellants sought dismissal of 17 plaintiffs and the district court granted the motion as to ten plaintiffs -- the district court also declined to "reduce the overall award" because "the work done on behalf of the ten unsuccessful plaintiffs was intertwined with the work done on behalf of the seven successful plaintiffs." *Id.*

Then the district court concluded, "[w]hile [Appellees] here did not ultimately recover the damages sought at the beginning of litigation, their final award was successful." J.A. 215. Specifically, the district court observed that Appellees

> faced two significant challenges that very likely would have dramatically reduced their recovery had the case proceeded to trial: (1) a lack of proof regarding willfulness, which would have limited the statute of limitations to two years and reduced or eliminated a number of claims, and (2) the lack of documentation regarding the number of hours worked.

*Id.* at 215–16. The district court again observed that it did "not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees awards in cases of more moderate amounts." *Id.* at 215. Finally, the district court noted that Appellees' "counsel stated that based on his research and testimony from [David

8

Kwasnik[5]] at a prior hearing, [Appellants] would not have been able to pay a larger . . . verdict or settlement." *Id.* at 216. Given the risk of financial difficulties for Appellants and the likelihood that Appellees would recover substantially less at trial, the district court found the settlement amount to be "a sufficiently successful outcome, despite a recovery of only 13% of the initial damages sought." *Id.*

Appellants filed a second notice of appeal on June 27, 2018.

## II.

We review an award of attorney's fees for abuse of discretion. *See Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 675 (4th Cir. 2015). "Under this standard, reversal is appropriate only if the district court was clearly wrong or has committed an error of law." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 (4th Cir. 2016) (alteration and internal quotation marks omitted). We must "show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

## III.

Appellants make two arguments in this second appeal. First, they assert that the district court failed to properly reduce the fee award in light of the ten plaintiffs

---

[5] David Kwasnik is the owner of PowerComm Construction, Inc. and a party to this appeal.

dismissed at summary judgment. Second, Appellants argue the district court failed to properly assess Appellees' degree of success, given the disparity between the damages requested at the outset of litigation and the ultimate amount recovered in the settlement. In light of these asserted errors, Appellants request we vacate the district court's fee award and, rather than remanding a second time for another round of fee litigation, order that an appropriate fee be awarded.

Pursuant to the FLSA, a prevailing plaintiff is entitled to an award of reasonable attorney's fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fees to be paid by the defendant, and costs of the action."). To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs. We conclude the district court abused its discretion at step three.

A.

*Lodestar*

We begin at step one by determining the "lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (internal quotation marks omitted). This figure is presumptively reasonable except "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The district court

10

concluded that the lodestar figure in this case was $183,764.00.  *See* J.A. 213–14.  We have no quarrel with this figure.

B.

*Unsuccessful Plaintiffs*

At the second step, "the court *must* subtract fees for hours spent on unsuccessful claims unrelated to successful ones."  *McAfee*, 738 F.3d at 88 (internal quotation marks omitted) (emphasis supplied).  But, where "all claims involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (internal quotation marks omitted) (alterations in original).

Here, on this second appeal, after subtracting unspecified billing entries, the district court reduced the lodestar figure by approximately $6,000 -- a mere 3% of the lodestar figure -- to account for hours spent that were expressly billed to the ten unsuccessful plaintiffs (who represented 15% of the class).  The district court concluded that the remainder of the time was intertwined with the litigation as a whole and was not appropriately subtracted.  While we may not have reached the same outcome in the first instance, we nonetheless conclude the district court did not abuse its discretion at step two.

11

C.

*Degree of Success*

At step three, after determining the lodestar amount and subtracting for fees related to unsuccessful claims, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (internal quotation marks omitted). Here, the district court wholly failed to account for both the utterly unsuccessful plaintiffs and the meager victories. Thus, we conclude the district court failed to properly calculate "the degree of success enjoyed by [Appellees]." *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 676 (4th Cir. 2015).

Where the plaintiff's claims involve "a common core of facts" or are based on "related legal theories," then "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In that instance, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* But, success is not binary -- a party is not simply successful or unsuccessful but may achieve "partial or limited success." *Hensley*, 461 U.S. at 436. In such a situation, the party may be entitled to an award of some, but not all, of the attorney's fees requested. *See id.*

As we have previously observed, "it can be challenging to put a number on success" given that "[t]here is no precise rule or formula to aid the court in determining just how successful a plaintiff may have been." *Jones*, 777 F.3d at 676 (internal quotation marks omitted). Nonetheless, in attempting to quantify success, the court

12

"*must* compare the amount of damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (emphasis supplied). A difference between damages sought and recovered does not *automatically* require reduction. *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) ("[W]e do not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall."). And, while the court must compare the damages sought to that recovered, proportionality is not the only factor to consider when determining success. *See McAfee*, 738 F.3d at 94 (finding limited litigation success where McAfee recovered only her out of pocket damages and received no award for the other categories of damages sought).

1.

Taking into account all of these factors, we conclude the district court abused its discretion when it erroneously failed to consider the ten dismissed plaintiffs and Appellees' limited degree of litigation success. There were ten plaintiffs -- *15%* of the collective class -- who were entirely unsuccessful, and the district court failed to account for their dismissal in its step three analysis. While the district court did make a $6,007.50 reduction at step two (a mere 3% of the lodestar figure) to account for billing entries explicitly associated with the ten plaintiffs, it failed to incorporate the ten dismissed plaintiffs in its calculation of the degree of overall success at step three.

In doing so, the district court effectively found 97%[6] of the fees to be too "intertwined" to be deducted when it considered the overall success of the litigation. As a result, the district court excluded the ten dismissed plaintiffs (again, 15% of the plaintiffs) from consideration after step two, rather than properly deducting the billing entries associated with the unsuccessful plaintiffs and then considering the *overall* degree of success in light of the litigation as a whole -- including the dismissed plaintiffs. *See Hensley*, 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

Here, Appellees were categorically unsuccessful in their recovery. At the outset of the litigation, Appellees sought far more than just unpaid overtime wages. Appellees also sought liquidated damages and a declaration that Appellants violated the FLSA and MWHL. It is indisputable that the 55 remaining plaintiffs (after the ten plaintiffs were dismissed) recovered only a single category of the damages sought -- unpaid overtime wages. Appellees failed to obtain liquidated damages or a declaration that Appellants had violated either the FLSA or the MWHL. *See McAfee*, 738 F.3d at 91 (plaintiff's recovery of one of the three kinds of damages sought did not justify the substantial fee award when her "failure to recover any special compensatory damages, or any punitive damages at all, is taken into account").

---

[6] As noted, the district court deducted only $6,007.50 -- 3% -- from the requested attorney's fee award of $183,764.00. The remaining 97% of the requested fees, then, the district court necessarily concluded were too intertwined with the successful plaintiffs or the overall litigation.

14

2.

Next, the district court abused its discretion by overstating Appellees' degree of success. Specifically, when comparing the relief sought to that recovered, it is clear the district court abused its discretion when it deemed Appellees to be "sufficiently successful." J.A. 216. The total settlement -- for all 55 remaining plaintiffs -- was $100,000.00. Each plaintiff -- except Dana Brown and Gregory Randolph -- received only 38% of their claimed unpaid overtime wages. And, in total, Appellees recovered only 6% of the damages sought at the outset of litigation and only 13% of that sought in their amended Rule 26(a) disclosures.[7]

This, like the outcome in *McAfee*, can hardly be deemed a success. The mere fact that, if the case proceeded to trial, Appellees were unlikely to recover more than the settlement amount does not automatically render the outcome categorically successful -- particularly given that the likelihood of a lower recovery was openly attributed to a lack of evidence supporting Appellees' damages. We do plaintiffs no service by rewarding their counsel for pursuing weak claims from the outset.

Whereas the district court expressed concern that it did "not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees

---

[7] To review, at the outset of litigation, Appellees' alleged $1,745,875.65 in damages. In Appellees' amended Rule 26(a) disclosures, Appellees' alleged $789,916.23 in damages. By the end of litigation, Appellees settled the claims of the 55 remaining plaintiffs for $100,000.00. Considering the settlement amount and the damages requests, Appellees' recovered only 5.7% of the original damages sought ($100,000.00 / $1,745,875.65 = 5.7%) and only 12.7% of the amended damages sought ($100,000.00 / $789,916.23 = 12.7%).

15

awards in cases of more moderate amounts," J.A. 215, the flip side is also of concern. That is, plaintiffs' counsel should not be incentivized to solicit clients with promises of riches when they do not have sufficient proof to support the claims. As noted by the district court, Appellees:

> faced two significant challenges that very likely would have dramatically reduced their recovery had the case proceeded to trial: (1) a **lack of proof** regarding willfulness, which would have limited the statute of limitations to two years and reduced or eliminated a number of claims, and (2) the **lack of documentation** regarding the number of hours worked.

*Id.* at 215–16 (emphases supplied). Whose job is it to prove the case? Whose job is it to provide documentary evidence in support of the claims? Plaintiffs' counsel. Plaintiffs' counsel should not be rewarded in this circumstance -- or incentivized to bring such claims.

Finally, by failing to consider the *degree* of success -- and, rather, considering only whether Appellees achieved "sufficient"[8] success -- the district court "overstated

---

[8] Our case law on attorney's fees does not contemplate nor speak to the sufficiency of success. To the contrary, we have only briefly discussed sufficiency in this context in *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995), in which we affirmed the district court's conclusion that "the degree to which Mrs. Martin prevailed and the magnitude of her success is not sufficient to warrant an award of *such a large amount of attorney's fees*." (internal quotation marks omitted) (emphasis in original). Our limited discussion in *Martin* speaks only to our conclusion that the district court was not "clearly wrong" in that specific case regarding the plaintiff's degree of success in comparison to the fees awarded. *See id.* It is clear, then, that "sufficient success" is not a determinative factor in the award of attorney's fees -- rather, it is a factor that may be considered when determining whether a fee award is reasonable. *See id.* at 1359 ("Fee and cost awards must be fair and must fully compensate prevailing attorneys, but they are not intended to produce windfalls to attorneys." (citations and internal quotation marks omitted)).

16

[Appellees'] degree of success" and "erred in not making an attorney's fee award that would properly reflect [their] success in this case." *McAfee*, 738 F.3d at 94; *see also* J.A. 216 (district court op.) ("This was a sufficiently successful outcome, despite a recovery of only 13% of the initial damages sought, and the Court will not reduce attorney's fees here on the basis of the results obtained."). Accordingly, we conclude the district court abused its discretion and vacate the award.

D.

*Appropriate Award*

It is well accepted that "[a] request for attorney's fees should not result in a second major litigation." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 181 (4th Cir. 1994) (internal quotation marks omitted); *see also Hensley*, 461 U.S. at 437; *McAfee*, 738 F.3d at 95. Given that this case has now been before us twice for calculation of the attorney's fees award, we now "vacate the attorney's fees award and direct that it be reduced" by an appropriate amount in order "to avoid further expense and the nonessential use of judicial resources associated with remand proceedings and other appeals." *McAfee*, 738 F.3d at 95. As such, we conclude a reduction of 25% of the district court's award ($177,756.50) is appropriate in this case and direct that an attorney's fees award of $133,317.38, exclusive of costs, be awarded.

IV.

For the reasons stated above, we conclude that the district court abused its discretion. Accordingly, we vacate the attorney's fees award and direct that an award of $133,317.38, exclusive of costs, be entered by the district court on remand.

*VACATED AND REMANDED WITH INSTRUCTIONS*