**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-2089**

———————

BEST MEDICAL INTERNATIONAL, INC., a Virginia corporation;
BEST VASCULAR, INC., a Delaware corporation,

Plaintiffs - Appellants,

v.

ECKERT & ZIEGLER NUCLITEC GMBH, a German corporation,
successor to QSA Global GmbH,

Defendant - Appellee.

———————

**No. 11-2141**

———————

BEST MEDICAL INTERNATIONAL, INC., a Virginia corporation;
BEST VASCULAR, INC., a Delaware corporation,

Plaintiffs - Appellees,

v.

ECKERT & ZIEGLER NUCLITEC GMBH, a German corporation,
successor to QSA Global GmbH,

Defendant - Appellant.

———————

**No. 12-1121**

———————

BEST MEDICAL INTERNATIONAL, INC., a Virginia corporation;
BEST VASCULAR, INC., a Delaware corporation,

Plaintiffs - Appellants,

                    v.

ECKERT & ZIEGLER NUCLITEC GMBH, a German corporation,
successor to QSA Global GmbH,

                    Defendant - Appellee.

                    _____

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:10-cv-00617-CMH-IDD)

                    _____

Argued:  October 23, 2012            Decided: January 22, 2013

                    _____

Before NIEMEYER, KING, and AGEE, Circuit Judges.

                    _____

Affirmed in part, vacated in part, and remanded for further
proceedings by unpublished per curiam opinion.

                    _____

**ARGUED:**  James Michael Brady, BEST MEDICAL INTERNATIONAL, INC.,
Springfield, Virginia, for appellants.  Carl Dewayne Lonas,
MORAN, REEVES & CONN, PC, Richmond, Virginia, for appellee.  **ON
BRIEF**:  Matthew J. Hundley, MORAN, REEVES & CONN, PC, Richmond,
Virginia, for appellee.

                    _____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 1999, a predecessor of Eckert & Ziegler Nuclitec GmbH (referred to hereinafter, together with Eckert & Ziegler, as "EZN") entered into a Manufacturing Agreement with the predecessor of Best Medical International, Inc. and Best Vascular, Inc. (referred to hereinafter, together with Best Medical and Best Vascular, as "Best"), under which EZN agreed to manufacture for Best strontium 90 "sources." Sources are enclosed capsules of strontium 90 used -- individually or in a "train" of sources welded together -- for medical radiation therapy. Under the Manufacturing Agreement, EZN constructed a production line at its facility in Braunschweig, Germany, with which to manufacture sources. Best agreed to buy the sources and, at the conclusion of the manufacturing contract, to pay to dismantle and decommission the production line. Best also agreed to purchase a specified amount of remaining inventory.

The Manufacturing Agreement, however, broke down and ended up in litigation between the parties. The litigation was ultimately resolved by a Settlement Agreement, entered into on April 16, 2008, under which the parties agreed to decontaminate and dismantle the production line and dispose of the inventory. But again, the Settlement Agreement broke down, resulting in the current litigation.

Under the Settlement Agreement, Best agreed to "decontaminate and decommission" the production line by April 16, 2009, and EZN agreed to fully cooperate in that effort. Best also agreed to provide a performance bond in the amount of €200,000. If Best were to become delayed in its performance because of EZN's "willful and intentional failure to cooperate," Best would be entitled to an extension of performance, provided that it followed certain procedures. If, however, Best were delayed for other reasons, it was entitled to cure, but only if it paid an extension fee of €50,000 per month, for a maximum of four months. If Best did not cure, then EZN would itself have the right to decontaminate and decommission the production line, using commercially reasonable efforts. In that event, it was entitled to recover its costs from the performance bond and excess costs from Best directly. The Settlement Agreement provided that any disputes about EZN's costs in decontaminating and decommissioning the production line were to be submitted to binding arbitration.

The Settlement Agreement also provided that Best would pay €100,000 for the purchase of source trains containing 500 sources that EZN had produced under the Manufacturing Agreement, and EZN agreed to accept from Best sources and source trains that needed to be disposed of, so long as Best was not in

4

default of its obligation to decontaminate and decommission the production line.

Finally, the parties agreed that disputes not covered by the arbitration clause would be governed by Virginia law and that "the prevailing party [would] be entitled to recover, in addition to any damages proven at trial, reasonable attorneys' fees and costs incurred in any such action."

After the parties executed the Settlement Agreement, EZN agreed to allow Best to substitute a letter of credit for the performance bond. The parties disagree, however, on whether Best ever submitted the original letter of credit or even whether the letter of credit that Best had obtained was in an acceptable form.

In the performance of the Settlement Agreement, Best paid for four extensions with respect to its obligation to decontaminate and decommission the production line, but even with the extensions, it never performed the task. In January 2010, EZN told Best that it was undertaking the task, as it was authorized to do by the Settlement Agreement. In addition, even though Best paid the required €100,000 for source trains and EZN offered to ship Best the source trains it had in stock, Best refused to accept those source trains, claiming that they did not meet the specifications set forth in the original Manufacturing Agreement.

5

Best commenced this action in June 2010, relying on diversity jurisdiction, for injunctive relief and damages. It alleged: (1) that EZN was equitably estopped from conducting the decontamination and decommission task and from disposing of the production line in the course of decontaminating and decommissioning the production line; (2) that EZN breached the Settlement Agreement by not cooperating with Best; and (3) that EZN breached the Settlement Agreement by not providing Best with source trains and sources that met the specifications of the original Manufacturing Agreement.

In addition to filing its answer to Best's complaint, EZN filed a counterclaim in which it alleged: (1) that Best breached the Settlement Agreement by failing to post a performance bond; (2) that Best breached the Settlement Agreement by failing to decontaminate and decommission the production line; (3) that Best fraudulently induced EZN to enter into the Settlement Agreement; and (4) that EZN should be awarded declaratory relief stating that Best had defaulted under the Settlement Agreement and that its default relieved EZN from any obligation to dispose of sources.

On the parties' cross-motions for summary judgment, the district court entered judgment on September 7, 2011, dismissing all claims, as stated in both the complaint and the counterclaim. Best Med. Int'l, Inc. v. Eckert & Ziegler

6

Nuclitec GmbH, No. 1:10-cv-617, 2011 WL 3951675 (E.D. Va. Sept. 7, 2011). In dismissing Best's complaint the court concluded, among other things: (1) that Best did not make "the necessary showing on the representation element of any possible equitable estoppel claim"; (2) that Best did not demonstrate that EZN had willfully and intentionally failed to cooperate; and (3) that the Settlement Agreement only required EZN "to attempt to satisfy the Source manufacturing requirements based on availability of the current inventory." Id. at *2-5. In dismissing EZN's counterclaim the court concluded, among other things: (1) that EZN did not establish that it had suffered damages from Best's failure to provide a performance bond; (2) that "although Best did default on its [decontamination and decommissioning] obligation, the arbitration provisions of the contract [were] still in effect"; (3) that EZN had no evidence that supported a claim of fraudulent inducement; and (4) that the claim for a declaratory judgment requested in the fourth count was moot. Id. at *5-7.

EZN and Best then each moved for attorneys' fees and costs, claiming to be the "prevailing party" entitled to that award under the Settlement Agreement. In an order dated January 6, 2012, the district court found EZN to be the prevailing party and therefore entitled to its attorneys' fees and costs. EZN sought $584,735.08 in fees, $32,892.61 in nontaxable costs, and

$14,845.70 in costs taxable under Federal Rule of Civil Procedure 54(d)(1). EZN explained that its fee request incorporated a 10% reduction to the lodestar to account for the unsuccessful aspects of its counterclaim and that it had also reduced its fees by $38,255.60 to account for prelitigation activities, non-core timekeepers, the fraud claim, a motion to compel that the court had denied as untimely, and duplicate timekeepers. The district court awarded EZN its full claim, concluding that the hours and rates were reasonable; that EZN's 10% discount to its lodestar was reasonable; and that there was no need to further discount because of EZN's "failure to prevail on its counterclaim as there was no duplication involved over and above the effort to defend itself."

This appeal followed, with both parties challenging the district court's rulings.[*]

After carefully considering the arguments presented by the parties and reviewing the record, we affirm the district court's summary judgment on the merits, substantially for the reasons given by the court in its opinion. We also affirm the district court's conclusion that EZN was the prevailing party. But, as to the amount of EZN's attorneys' fees and costs, which we conclude might be unreasonably excessive in the absence of an

---

[*] The amount of the costs taxable under Rule 54(d)(1) has not, however, been challenged on appeal.

analysis based on the applicable factors identified in Johnson v. City of Aiken, 278 F.3d 333 (4th Cir. 2002), we remand for a further analysis that takes into account the applicable Johnson factors. While the district court did generally recognize the Johnson factors, it applied the factors in only the most conclusory manner, stating, "Taking the Johnson factors into account, the Court finds the hours expended and the rates billed to be reasonable."

Accordingly, we affirm the district court's summary judgment on the merits and its ruling that EZN was the prevailing party; we vacate its award of attorneys' fees and costs; and we remand with respect to its award of attorneys' fees and costs to allow the court to reevaluate EZN's claim in light of the Johnson factors.

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED FOR
FURTHER PROCEEDINGS