UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1708

BEST MEDICAL INTERNATIONAL, INC., a Virginia Corporation;
BEST VASCULAR, INC., a Delaware Corporation,

Plaintiffs – Appellants,

v.

ECKERT & ZIEGLER NUCLITEC GMBH, a German corporation,
successor to QSA Global GmbH,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Claude M. Hilton, Senior
District Judge. (1:10-cv-00617-CMH-IDD)

Argued: March 18, 2014          Decided: April 8, 2014

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Affirmed by unpublished opinion. Judge Agee wrote the opinion,
in which Judge Niemeyer and Judge King joined.

**ARGUED**: James Michael Brady, BEST MEDICAL INTERNATIONAL, INC.,
Springfield, Virginia, for Appellants. Carl Dewayne Lonas,
MORAN REEVES & CONN PC, Richmond, Virginia, for Appellee. **ON
BRIEF**: Shawn R. Weingast, BEST MEDICAL INTERNATIONAL, INC.,
Springfield, Virginia, for Appellants. Matthew J. Hundley,
MORAN REEVES & CONN PC, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

In a prior decision involving these parties, we affirmed the district court's judgment on the merits with the exception of an award of attorneys' fees and costs. See Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH, 505 F. App'x 281 (4th Cir. 2013). We concluded that Eckert & Ziegler Nuclitec GmbH ("EZN") was the prevailing party in its litigation against Best Medical International, Inc. and Best Vascular, Inc. (collectively "Best"). However, we vacated that part of the district court's judgment awarding fees and costs to EZN because that award did not reflect the required analysis under Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Accordingly, we remanded the attorneys' fees and costs portion of the prior judgment to the district court so that it could undertake "a further analysis that [took] into account the applicable Johnson factors." Best Med., 505 F. App'x at 284.

In a thorough opinion, the district court conducted the Johnson analysis and awarded EZN fees and costs. Best now appeals that decision. For the reasons set forth below, we affirm the district court's judgment.

I.

We need not discuss all the specifics of the underlying litigation, as that matter is fully covered in our prior

2

opinion.  See Best Med., 505 F. App'x at 282-84.  Nonetheless, we briefly summarize certain facts that are useful to understand the context in which the current appeal arises.

A.

In 1999, AEA Technology-QSQ GmbH ("QSA") entered into a manufacturing agreement with one of Best's predecessors.  Under that agreement, QSA was to manufacture "sources" or "source trains" of strontium and sell that product to Best's predecessor.  At the end of that contract, Best was obligated to decontaminate and decommission QSA's manufacturing production lines in Germany used to make these sources.

Best failed to decontaminate the manufacturing line as agreed, so QSA sued to enforce the contractual covenant.

QSA and Best settled QSA's suit under a 2008 Settlement Agreement that provided Best was to complete its decontamination work by a certain date and post a performance bond.  Best was also required to buy minimum orders of "source trains" that met defined specifications.  Furthermore, the Settlement Agreement provided that "the prevailing party [would] be entitled to recover . . . reasonable attorneys' fees and costs incurred" in "any litigation" "brought for breach" of the agreement.  (J.A. 62.)

The Settlement Agreement soon unraveled. Best did not timely perform the required decontamination work, which caused EZN (having acquired QSA in 2009) to notify Best in 2010 that it planned to do the work at Best's expense. Best also did not post the performance bond. For its part, Best complained that EZN was producing strontium sources that did not meet the specifications found in the parties' original manufacturing agreement.

B.

When the Settlement Agreement broke down, Best initiated a suit raising three principal complaints:

> (1) that EZN was equitably estopped from conducting the decontamination and decommission task and from disposing of the production line in the course of decontaminating and decommissioning the production line; (2) that EZN breached the Settlement Agreement by not cooperating with Best; and (3) that EZN breached the Settlement Agreement by not providing Best with source trains and sources that met the specifications of the original Manufacturing Agreement.

Best Med., 505 F. App'x at 283. Best sought certain injunctive relief (including an injunction to stop EZN from breaking the line down), sought "any monetary damages that [Best] sustained as a result of [EZN]'s actions," and sought a refund of payments that it made for the supposedly "non-compliant" sources. (J.A.

4

51.) The parties agreed that Best's requested relief would have been valued at no less than $8 million.

In response, EZN filed a four-count compulsory counterclaim under Federal Rule of Civil Procedure 13, alleging:

> (1) that Best breached the Settlement Agreement by failing to post a performance bond; (2) that Best breached the Settlement Agreement by failing to decontaminate and decommission the production line; (3) that Best fraudulently induced EZN to enter into the Settlement Agreement; and (4) that EZN should be awarded declaratory relief stating that Best had defaulted under the Settlement Agreement and that its default relieved EZN from any obligation to dispose of sources.

Best Med., 505 F. App'x at 283.

Upon cross motions for summary judgment, the district court ruled largely for EZN. See Best Med. Int'l., Inc. v. Eckert & Ziegler Nuclitec GmbH, No. 1:10-cv-617, 2011 WL 3951675 (E.D. Va. Sept. 7, 2011). The court held that Best had not adequately established any of its claims. Further, the court determined that two of the four EZN counterclaims had not been shown. As to EZN's second counterclaim, the court concluded that Best had defaulted on its obligation under the Settlement Agreement to decommission and decontaminate the German production lines, but found that any damages claim should be arbitrated -- under an arbitration clause in the Settlement Agreement -- once EZN completed its own cleanup efforts. The district court dismissed

5

the declaratory judgment count as "moot" because the court had "ruled on all points raised" in that count. Id. at *7.

EZN and Best each moved for attorneys' fees and costs under the Settlement Agreement. After determining that EZN was the prevailing party, the district court proceeded to determine an appropriate amount of attorneys' fees and costs. The district court began by detailing the appropriate analysis. First, the district court recognized that it was to determine the lodestar figure by multiplying the number of reasonable hours by a reasonable fee. The district court acknowledged that it was to assess reasonableness by looking to the twelve factors in Johnson, 488 F.2d at 717-19. Second, the district court correctly explained that it was to deduct fees for time spent on unsuccessful claims. Third, the district court stated that it was to award some percentage of the remaining fees to account for the degree of success enjoyed by the prevailing party. Applying this analysis, the district court then awarded EZN attorneys' fees of $584,735.08 and costs of $32,892.61. The district court found those sums reasonable after "[t]aking the Johnson factors into account." (J.A. 588.) The award also reflected an approximately $38,000 voluntary reduction by EZN for fees related to (1) pre-litigation activity, (2) its unsuccessful fraud claim, and (3) an unsuccessful motion to compel. The district court concluded that no further reduction

6

was necessary to reflect EZN's lack of success on its counterclaims because "there was no duplication involved over and above the effort to defend itself against the claims in this case." (J.A. 589.)

In the initial appeal, we affirmed all of the district court's decisions except as to attorneys' fees and costs. We concluded that EZN's fees-and-costs request "might be unreasonably excessive in the absence of an analysis of the applicable factors," which the district court had conducted "only in the most conclusory manner." Best Med., 505 F. App'x at 284. Therefore, we vacated the fee and cost award so that the district court could fully consider the Johnson factors on remand.

C.

Following our decision in the first appeal, EZN filed a supplemental petition in the district court requesting an additional fees-and-costs award of roughly $309,036.56, representing amounts incurred after EZN's original October 2011 fees-and-costs petition. EZN also included an approximately $38,000 voluntary reduction, largely pertaining to its unsuccessful cross-appeal.

The district court discussed EZN's original fee petition and the supplemental petition in a thorough opinion in April

7

2013.  See Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH, No. 1:10-cv-617, 2013 WL 1856095 (E.D. Va. Apr. 29, 2013).  In that opinion, the district court again identified the correct three-step analysis for determining an appropriate award of fees and costs.  The district court then addressed each of the twelve Johnson factors that affect the reasonableness of a fee request and form the basis of the lodestar amount.  Specifically, it found that Johnson factors one (time and labor), four (opportunity costs), five (customary fee), eight (results obtained), eleven (length of relationship), and twelve (awards in similar cases), all justified the award.  No Johnson factor justified an enhancement of or deduction from EZN's requested amounts.  The district court determined that unsuccessful claims had been accounted for through voluntary reductions by EZN's counsel, and a further percentage reduction was unnecessary given that all the claims were united by a common set of facts.  The district court then awarded EZN all of its requested fees and costs after the voluntary reductions were applied.

The district court issued an amended order that provided that EZN was to receive $871,414.49 in attorneys' fees and $55,249.76 in costs.  This timely appeal followed, over which we have jurisdiction under 28 U.S.C. § 1291.

II.

In an appeal from an award of attorneys' fees,[1] our standard of review is exceptionally deferential, as we apply a "sharply circumscribed" version of our traditional abuse-of-discretion standard. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). Under that standard, "the fee award must not be overturned unless it is clearly wrong." Id. In addition, "we will not ordinarily disturb the award even though we might have exercised th[e] discretion [to award fees] quite differently." Johnson v. Hugo's Skateway, 974 F.2d 1408, 1418 (4th Cir. 1992) (quotation marks omitted). We defer in recognition of the district court's "close and intimate knowledge of the efforts expended and the value of the services rendered." In re A.H. Robins Co., 86 F.3d 364, 376-77 (4th Cir. 1996) (quotation marks omitted); EEOC v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012) ("The fixing of attorneys' fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action." (quotation marks omitted)).

"It is for the district court in the first instance to calculate an appropriate award of attorney's fees." Carroll v.

---

[1] Best does not challenge the award of costs to EZN.

9

<u>Wolfpoff & Abramson</u>, 53 F.3d 626, 628 (4th Cir. 1995).  The district court, upon remand, has done so in an opinion addressing the <u>Johnson</u> factors.  Under our standard of review, Best has a heavy burden to present a case on appeal that warrants our overturning the district court's determinations.  Not only would another reversal continue this long-running dispute,[2] but it would also invite future litigants to transform their attorneys' fees disputes into standalone pieces of major appellate litigation.  See <u>id.</u> ("Reviewing fee awards solely for abuse of a district court's discretion restricts a litigant's propensity to engage in secondary or satellite litigation.").  Encouraging this sort of never-ending review would conflict with one of the most often repeated maxims in the attorneys' fee context: "[a] request for attorney's fees should not result in a second major litigation."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>see also</u> <u>Daly v. Hill</u>, 790 F.2d 1071, 1079 n.10 (4th Cir. 1986) ("[A]ppeals from awards of attorney's fees, after the merits of a case have been concluded, . . . must be one of the least socially productive types of litigation imaginable[,] . .

---

[2]  Indeed, Best's briefs -- asking us to parse most every line of EZN's bills on this second trip -- reads as an invitation to turn this case into a nearly interminable dispute over fees.

10

. [especially] when litigants challenge a district court's factual findings." (quotation marks omitted)).

Keeping our deferential standard of review in mind, we turn to the merits of the dispute.

## III.

As the district court correctly recognized, "courts evaluate attorney's fees under a reasonableness standard." In re Abrams & Abrams, P.A., 605 F.3d 238, 243 (4th Cir. 2010); accord Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998) (explaining that party seeking fees under contractual provision must show that fees are reasonable). "The proper calculation of an attorney's fee award involves a three-step process." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). "First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Id. (quotation marks omitted). At this step, the court should consider the so-called Johnson factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal

11

community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 88 n.5; see also Robinson, 560 F.3d at 243 ("In deciding what constitutes a 'reasonable' number of hours and rate, we have instructed that a district court's discretion should be guided by the [Johnson] factors."). Second, the court "must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." McAfee, 738 F.3d at 88 (quotation marks omitted). Third, and finally, the court "should award some percentage of the remaining amount, depending on the degree of success enjoyed by the [party]." Id. at 88 (quotation marks omitted).

Having carefully reviewed the record and the parties' arguments, we find no basis to reverse the district court's determination that the attorneys' fee award here was reasonable. We affirm the award substantially for the reasons given by the district court in its opinion.

We observe that the district court applied the correct legal and factual criteria. Best does not raise any objection to half of the lodestar analysis: the reasonableness of the rates of EZN's counsel. Instead, it directs many of its objections to the reasonableness of EZN's claimed hours. Yet the district court carefully applied the Johnson factors to

12

measure the reasonableness of those hours and appropriately determined that they reflected an exercise of billing judgment. Furthermore, the district court's factual conclusions, chronicled in its comprehensive opinion on remand, find support in the substantial evidence submitted by EZN in support of its two fee petitions and the expert testimony attesting to the reasonableness of the claimed fees. Once the district court correctly calculated the lodestar figure, there attached a "strong presumption" that the figure was reasonable. Perdue v. Kenny A., 559 U.S. 542, 554 (2010).

Many of Best's contentions on appeal relate to its belief that the district court did not adequately account for the relief EZN actually obtained -- or did not obtain -- on its claims. Whether such arguments are premised on Johnson's "results obtained" factor or the third step's "degree of success" adjustment, they afford no basis to reverse the district court. The district court specifically held that "the amount in controversy was substantial and EZN obtained favorable results on the merits throughout the litigation in this Court and at the Fourth Circuit as this Court's findings and conclusions of law and liability were affirmed." Best Med., 2013 WL 1856095, at *4. The district court's view of the disposition of the case is accurate given that this dispute centered upon Best's claims, not those brought as compulsory

13

counterclaims by EZN. EZN was entirely successful in defending Best's claims. Despite this broad success, the district court nevertheless applied more than $50,000 in reductions for certain less-than-fully-successful claims and appeals. Id. at *5-6. Though the district court refused to make further deductions, it did so because most of the claims were "united by a common core of facts." Id. at *6, *7. In light of that finding, the district court might have in fact committed reversible error by reducing the fees further. See Bodziak v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998) (reversing lower court judgment that reduced fees and costs by 40 percent, where lower court had not made a finding that the successful and unsuccessful claims were not founded upon a "common core of facts"). We also cannot fault the district court's "common core" finding, as many of the facts underlying EZN's counterclaims also supported its defenses against Best's initial claims. See, e.g., Parr v. Alderwoods Grp., Inc., 604 S.E.2d 431, 435 (Va. 2004) ("[T]he first party to materially breach the contract cannot enforce the provisions of the . . . contract.").

Though we do not endeavor to address each of Best's many other attacks on the district court's judgment, we note that many of them -- if not all of them -- address matters that fall within the heartland of the district court's discretion. Compare, e.g., (Opening Br. 8-18 (arguing that the district

14

court awarded fees for hours that were excessive, unnecessary, or duplicative)), with Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986) (noting that "[t]he district court was in the best position to determine whether the efforts of the . . . attorneys were duplicative [or] . . . reasonably necessary under the particular circumstances"). Given that reality, we are not at all left with "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 161 (4th Cir. 2012) (quotation marks omitted).

IV.

For these reasons, then, the district court's judgment on attorneys' fees and costs is

AFFIRMED.